**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT CHARLES CLASS A, L.P. and ROBERT L. TEEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOES NOS. 1-10, | ) ) ) |
| Defendants. | ) ) ) |

Case No. 1:18-cv-11115

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Robert Charles Class A, L.P. and Robert L. Teel ("Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, allege the following based upon personal knowledge, as to Plaintiffs and Plaintiffs' own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiffs' attorneys, which includes, among other things, a review of the Information, filed in *United States v. Edmonds*, No. 3:18-cr-00239 (D. Conn.), the Plea Agreement in that case, and related reports. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, particularly given the concealed nature of Defendants' (defined below) misconduct.

## SUMMARY OF ALLEGATIONS

1. This case arises from Defendants' manipulation of prices for precious metals futures contracts through a scheme known as "spoofing." Spoofing is a practice in which traders artificially manipulate conditions – such as supply, demand, and price – by entering buy or sell orders that they do not intend to follow-through on and then cancelling those orders. These

deceptive buy and sell orders inject materially false and misleading information into markets and are intended to cause other investors to trade on Defendants' genuine orders under conditions that are more favorable to Defendants than would otherwise have occurred.

2.      Defendant John Edmonds ("Edmonds") was a precious metal trader at Defendant JPMorgan Chase & Co. ("JPMorgan" and collectively, with Edmonds, "Defendants") and, along with other employees of the bank, undertook the spoofing scheme.  As set forth herein, he has pled guilty to this unlawful conduct that was designed to, and did, artificially move the price of precious metals futures contracts in a direction that was favorable to Defendants, to the detriment of other market participants.

3.      The illegal scheme covered gold, silver, platinum, and palladium futures contracts traded on the New York Mercantile Exchange ("NYMEX") and the Commodity Exchange, Inc. ("COMEX").

4.      Accordingly, Plaintiffs bring this action as a class action on behalf of all persons who traded precious metals futures contracts, or options on those futures contracts, on the NYMEX or the COMEX from approximately January 1, 2009 through December 31, 2015, inclusive (the "Class Period"), for Defendants' violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§1, *et seq.*, and the common law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337(a), and §22 of the CEA, 7 U.S.C. §25.  This Court also has jurisdiction over the state law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

6.      Venue is proper in this District, pursuant to 28 U.S.C. §1391(b), (c), and (d) and §22 of the CEA, 7 U.S.C. §25(c).  One or more of the Defendants resided, transacted business, were found, or had agents in this District.

7.      Defendants, directly and indirectly, made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and course of business alleged herein.

## PARTIES

### A.      Plaintiffs

8.      Plaintiff Robert Charles Class A, L.P. ("RCA") is a California Limited Partnership, which, at all relevant times, maintained its principal place of business in San Diego, California.  RCA transacted in Gold and Silver Futures and options on NYMEX and COMEX during the Class Period at artificial prices that were caused by Defendants' unlawful conduct, resulting in injury to its business or property by reason of Defendants' violations of law, as alleged herein.

9.      Plaintiff Robert L. Teel ("Teel") is an individual who, at all relevant times, has been a resident of San Diego, California.  Teel transacted in Gold and Silver Futures and options on NYMEX and COMEX during the Class Period at artificial prices that were caused by Defendants' unlawful conduct, resulting in injury to its business or property by reason of Defendants' violations of law, as alleged herein.

### B.      Defendants

10.      Defendant JPMorgan is an investment bank and financial services company headquartered in this District at 270 Park Avenue, New York, New York 10017.  JPMorgan engages in a wide-variety of financial services, including commodities trading.  Its U.S.-based

traders transacted in precious metals futures and options contracts on NYMEX and COMEX throughout the Class Period.

11.     Defendant Edmonds was employed by JPMorgan as a precious metal trader from approximately 2004 to August 2017.  Defendant Edmonds is a resident of Brooklyn, New York. He pled guilty to one count of commodities fraud with regard to precious metals futures contracts on the NYMEX and COMEX and to one count of conspiracy to commit wire fraud, commodities fraud, commodities price manipulation, and spoofing.

12.     Defendants John Does Nos. 1-10, inclusive, are other precious metals traders employed by Defendant JPMorgan that participated in, facilitated, and assisted with the manipulation, and unlawful conduct alleged herein.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.      Spoofing**

13.     "Spoofing" is a practice in which traders attempt to give an artificial impression of market conditions by entering and quickly canceling large orders onto an exchange in an attempt to manipulate prices.  In other words, traders place numerous simultaneous orders on both the buy and sell side of a commodity, one set of which – the "spoof" orders – they intend to cancel and the opposite set are genuine.  When, for example, traders seek to lower the price of a commodity future in order to purchase it at a cheaper price, they place numerous sell orders at consistently lower prices in order to artificially lower the price of that commodity.  The traders then execute their genuine buy orders while simultaneously canceling their spoof sell orders.

**B.**     **Defendants Engaged in a Scheme to Manipulate the Prices of NYMEX and COMEX Precious Metals Futures and Options Contracts**

14.     Defendant Edmonds was employed at JPMorgan from 2004 through August 2017. During the relevant Class Period, Edmonds was employed as a precious metals trader.  He started as an associate and was eventually promoted to Vice President.

15.     From approximately 2009 through 2015, Edmonds, and other precious metal traders at JPMorgan, manipulated precious metal prices through spoofing.  Other, more senior, JPMorgan traders taught this unlawful and complex practice to Edmonds and were aware of, and consented to, Edmonds's regular resort – hundreds of times – to spoofing.

16.     The purpose of Edmonds's scheme was to "to deceive other market participants by injecting materially false and misleading information into the precious metals futures contracts markets about the existence of supply and demand for those futures contracts, and thus to induce other market participants to buy and sell futures contracts at prices, quantities, and times that they otherwise likely would not have traded, all in order to make money and avoid losses" for Edmonds, other precious metals traders, and JPMorgan.

17.     Edmonds would place electronic orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution – the "spoof" orders – from computers at JPMorgan's office in New York.  These deceptive orders were then transmitted to the NYMEX and COMEX, which where commodities exchanges operated by the CME Group Inc., a commodities marketplace located in Illinois.  The NYMEX and COMEX were registered entities with the U.S. Commodities Futures Trading Commission.

18.     In placing these spoof orders, Edmonds intended to deceive market participants "by injecting materially false and misleading information into the markets for precious metals futures contracts about the existence of supply or demand for those futures contracts."  Indeed,

the spoof orders were intended to, and in fact did, induce other market participants to trade against Edmonds's genuine orders, that he actually wanted to execute, on the opposite side of the market from the spoof orders at prices, quantities, and times at which the other market participants otherwise would not have traded.

19.     These spoof orders were designed to, and did, artificially move the price of precious metals futures contracts in a direction that was favorable to Edmonds and JPMorgan to the detriment of other market participants.  More specifically, this sophisticated spoofing scheme benefitted Defendants and caused Plaintiffs and the Class (defined below) to suffer damages by trading at artificially manipulated prices.

20.     Because of Edmonds's misconduct, he was charged by the U.S. Attorney for the District of Connecticut, with engaging in commodities fraud and conspiracy to engage in commodities fraud, commodities price manipulation, and spoofing.   On October 10, 2018, Edmonds pled guilty to these charges.

## CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this class action on behalf of all persons who traded precious metals futures contracts or any options on those futures contract, on the NYMEX or the COMEX, from at least January 1, 2009 through December 31, 2015 (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time,

and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds, potentially thousands, of members in the proposed Class.

23.    Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

25.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        a.    Whether Defendants manipulated the price for precious metals futures contracts, or the price of options on those futures contracts, in violation of the CEA;

        b.    Whether Defendants' unlawful conduct damaged Plaintiffs and the Class;

        c.    Whether Defendants, through their unlawful conduct, unjustly enriched themselves to the detriment of Plaintiffs and members of the Class; and

        d.    The time period and extent of Defendants' unlawful conduct.

26.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small compared to the expense and burden of individual litigation, it is practically impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**PLAINTIFFS AND THE CLASS WERE NOT, AND COULD NOT HAVE BEEN,
AWARE OF THEIR INJURY OR DEFENDANTS' UNLAWFUL CONDUCT PRIOR TO
THE UNSEALING OF THE INFORMATION AGAINST DEFENDANT EDMONDS**

27.     The unlawful conduct Defendants engaged in is, by its very nature, self-concealing.  The entire point of Defendants' spoof orders was that other market participants would believe they were genuine, and only Defendants knew that the orders were intended to be canceled.  It was this secret behavior that enabled Defendants' scheme to artificially manipulate market prices.

28.     Not only did Defendants fail to disclose this scheme, but Plaintiffs and the Class could not have discovered it because of its inherently self-concealing nature.  Nor could any reasonable due diligence enable Plaintiffs and the Class to uncover the secret inner workings of JPMorgan's traders.  In turn, Plaintiffs and the Class could not have discovered their injury from Defendants' inherently self-concealing scheme.

29.     Thus, Plaintiffs and the Class did not, and could not, have knowledge or notice of Defendants' unlawful and self-concealing scheme before November 5, 2018.  On that day, U.S. District Court Judge Robert N. Chatigny granted the U.S. Department of Justice's motion to unseal the case, including the Information, filed against Defendant Edmonds for violations of the CEA related to precious metals trading.

30.     To the extent Defendants would argue that any claims asserted herein are untimely, such an argument is invalid.

**FIRST CLAIM FOR RELIEF**
**For Manipulation in Violation of the Commodity Exchange Act**
**7 U.S.C. §§1, *et seq*.**
**(Against All Defendants)**

31.     Plaintiffs incorporate ¶¶1-30 by reference.

32.     Through the acts alleged herein, from at least January 1, 2009 through December 31, 2015, Defendants specifically intended to, and did, cause the manipulation of prices of precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, in violation of the CEA, 7 U.S.C. §1, *et seq*., through their use of spoof buy and sell orders and other manipulative conduct.

33.     Defendants manipulated the price of a commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

34.     The prices of precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, did not result from legitimate market forces or information during the Class Period.   To the contrary, Defendants' spoofing and other manipulative practices manipulated and artificially set those prices.

35.     Throughout the Class Period, Defendants regularly entered substantial spoof orders without the intention of having those orders filled and specifically intending to cancel those orders prior to execution.   By doing so, Defendants intended to inject illegitimate information about supply, demand, and price into the market place and to artificially move prices to benefit their own trades and positions.   Consequently, Plaintiffs and the Class suffered losses on their trades in precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX.   This unlawful conduct throughout the Class Period caused damages, and injury-in-fact, to Plaintiffs and Class members who purchased or sold such instruments at the artificially inflated or deflated prices.

36.     Defendants had the ability to cause, and did cause, artificial prices of precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, at all times and in all circumstances previously alleged herein.   Defendants, directly

and/or through their employees and/or affiliates, were active in the markets for precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, and were aware of the effects of spoofing and other manipulative conduct on those markets.

37.    By their intentional misconduct, Defendants each violated §§6(c)-(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§9, 13b, 13(a), and 25(a), throughout the Class Period.

38.    Plaintiffs and the Class would not have been subject to damages and injury-in-fact, but for the unlawful conduct of the Defendants alleged herein.

39.    All Plaintiffs and Class members are entitled to actual damages sustained in precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, for the violations of the CEA alleged herein.

**SECOND CLAIM FOR RELIEF**
**For Employing a Manipulative and Deceptive Device in**
**Violation of the Commodity Exchange Act**
**7 U.S.C. §§1, *et seq*. and Regulation 180.1(a)**
**(Against All Defendants)**

40.    Plaintiffs incorporate ¶¶1-39 by reference.

41.    The unlawful conduct alleged herein, including the use of systematically submitting and cancelling spoof orders and engaging in other manipulative conduct in order to artificially move prices for precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, constitutes Defendants' employment of a manipulative and deceptive device.

42.    Defendants' employment of that device was intentional and, in the alternative, reckless, conducted to generate ill-gotten trading profits at the expense of Plaintiffs and the Class.

43.    That misconduct on behalf of each Defendant violated §§6(c) and 22(a) of the CEA, 7 U.S.C. §§9 and 25(a), throughout the Class Period.

44.     Consequently, Plaintiffs and members of the Class have suffered damages and injury-in-fact due to artificial prices for precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX, which they would not have suffered, but for Defendants' unlawful conduct.

45.     Plaintiffs and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

**THIRD CLAIM FOR RELIEF**
**Principal-Agent Liability for Violation of the Commodity Exchange Act**
**7 U.S.C. §§1, *et seq*.**
**(Against All Defendants)**

46.     Plaintiffs incorporate ¶¶1-45 by reference.

47.     Each Defendant is liable under §2(a)(1) of the CEA, 7 U.S.C. §2(a)(1), for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment.

48.     As a result, Plaintiffs and members of the Class are each entitled to damages for the violation alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against All Defendants)**

49.     Plaintiffs incorporate ¶¶1-48 by reference.

50.     Defendants received financial benefits from their unlawful acts.  Their spoof orders and other unlawful conduct artificially manipulated the prices of precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX.  The intent and effect of this misconduct was to benefit their own trades and positions at the expense of Plaintiffs and the Class.

51.     In turn, this unlawful conduct caused Plaintiffs and other members of the Class to suffer injury, lose money, and transact at artificial prices for precious metals futures contracts, and options on those futures contracts, traded on the NYMEX and COMEX.

52.     It is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiffs and the Class.   Equity and good conscience require Defendants to make restitution.

53.     Each Defendant should pay restitution for its own unjust enrichment to Plaintiffs and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.     Certifying this class action, appointing Plaintiffs as a Class representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.     Awarding damages in favor of Plaintiffs and the Class jointly and severally, together with prejudgment interest at the maximum rate allowable by law;

C.     Awarding Plaintiffs and the Class restitution of any and all sums of Defendants' unjust enrichment;

D.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

E.     Awarding rescission, disgorgement, or such other equitable, injunctive, or other relief deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:   November 28, 2018
         New York, New York

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Thomas L. Laughlin, IV*
THOMAS L. LAUGHLIN, IV
DEBORAH CLARK-WEINTRAUB
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444
Facsimile:  (212) 233-6334
tlaughlin@scott-scott.com
dweintraub@scott-scott.com

**LOUIS F. BURKE PC**
Louis F. Burke
460 Park Avenue
New York, NY 10022
Telephone: (212) 682-1700
lburke@lfblaw.com

*Attorneys for Plaintiffs Robert Charles*
*Class A, L.P. and Robert L. Teel*